IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 20-cv-1681-WJM-NRN

PAULETTE HARPER,

    Plaintiff,

v.

BIOLIFE HEALTH AND WELLNESS, LLC, and
LINKUP MEDIA GROUP OF COMPANIES, INC.,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendants Biolife Health and Wellness, LLC ("Biolife H&W") and Linkup Media Group of Companies, Inc.'s ("Linkup") (jointly, "Defendants") Motion to Dismiss – Fed. R. Civ. P. 12(b)(2), (3), & (6) (Personal Jurisdiction, Venue, and Statute of Limitations) ("Motion to Dismiss"). (ECF No. 53.)  Plaintiff Paulette Harper filed a response in opposition (ECF No. 56), to which Defendants replied (ECF No. 59).

For the following reasons, the Motion to Dismiss is granted.

### I. BACKGROUND[1]

**A.    Allegations in Second Amended Complaint[2]**

Harper resides in Valdez, Alaska.  (¶ 2.)  Biolife H&W is a multi-million dollar

---

[1] Citations to (¶ __), without more, are references to the Second Amended Complaint. (ECF No. 36.)

[2] Harper alleges that she attached a copy of Biolife's 2012–2013 catalogue to the Second Amended Complaint.  (¶ 14.)  However, there are no attachments to the Second Amended Complaint.

natural dietary supplement business, which solicits business and distributes its products in all 50 states and internationally. (¶ 4.) Biolife H&W is owned by Linkup, a New York "flagship corporation of . . . entertainment groups, premium health products, and life improvement operations." (¶ 5.) Linkup handles marketing and media relations for Biolife. (¶ 7.) David Annakie is the founder and CEO of Defendants. (¶ 13.)

HoneyCombs Industries, LLC and HoneyCombs Herbs and Vitamins, LLC (jointly, "HoneyCombs"), which are based in Montrose, Colorado, are "the manufacturer and supplier of all of most of Biolife's products." (¶¶ 8–10.) According to Harper's personal knowledge, obtained when she worked in HoneyCombs's manufacturing and distributing facility in 2012 in Montrose, Defendants have engaged in commercial activities in Colorado by selling and marketing their product to customers there. (¶ 12.)

In 1974, Harper was diagnosed with bladder cancer—not colon cancer, as Biolife's catalogue states—and had successful surgery in October of that year. (¶ 15.) She has remained symptom free since, though Biolife's products and its predecessor products did not play a substantial role in her cure or recovery. (*Id.*)

Harper "has learned that Biolife and Linkup have been using her name and a false account of her recovery from cancer in its media advertising as a substantial and central foundation in promoting the efficacy of its products." (¶ 14.) Biolife's 2012–2013 catalogue is published in print and online. (*Id.*) The catalogue has been published since Biolife's inception, but with a number of substantial revisions over the years, which have been aimed at different audiences as the company has grown. (*Id.*) Harper never expressly or impliedly authorized Linkup or Biolife to use her name, story, or likeness. (¶ 16.)

As a result of Defendants' allegedly wrongful publication and use of her name, story, and likeness, Harper alleges that she suffered damages "from the invasion of her privacy; the violation of her right of publicity; and the loss of income she should have received from the fair value of the contribution of her name, story, and likeness to Defendants' product advertising[.]"  (¶ 17.)  She alleges Defendants have been unjustly enriched "in a like amount."  (*Id.*)

In her Second Amended Complaint, filed on June 24, 2021, Harper brings four claims against Defendants: (1) unjust enrichment; (2) violation of her right of privacy; (3) violation of the Alaska Unfair Trade Practices and Consumer Protection Act; and (4) punitive damages.  (ECF No. 36 at 5–6.)  She estimates her damages are not less than $3 million and asks the Court for: a preliminary and permanent injunction against Defendants from the use of her name, story, and likeness in selling, advertising, or marketing their products; compensatory damages; punitive damages; attorney's fees and costs; prejudgment and postjudgment interest; and joint and several liability against Defendants.  (*Id.*)

**B.      Previous Lawsuits**

This lawsuit is the third of its kind filed by Harper.  On June 2, 2015, Harper filed a lawsuit in the Superior Court in Valdez, Alaska against Linkup and a different entity defendant, Biolife Energy Systems, Inc. ("Biolife Energy"), *Harper v. BioLife Energy Systems, Inc.*, 426 P.3d 1067 (Alaska 2018) ("Alaska Action").  (¶ 18; ECF No. 53 at 3–4.)  The Alaska Action was dismissed on personal jurisdiction grounds and ultimately appealed to the Alaska Supreme Court, which affirmed the dismissal.  (¶¶ 6, 18.)  The

3

case was closed on September 9, 2018.[3]  (*Id.*)

On November 6, 2018, Harper filed a lawsuit in the District of Colorado against Linkup, Biolife Energy, Chrystal Combs, HoneyCombs Herbs and Vitamins, LLC, and HoneyCombs Industries, LLC.  *See Harper v. Biolife Energy Sys., Inc.*, Civil Action No. 18-cv-2868-DDD-SKC ("First Colorado Action"), ECF No. 1.  On April 29, 2020, the claims against Combs and the two HoneyCombs entities were dismissed with prejudice as time-barred.  *See Harper*, 2020 WL 13444243, at *3.

On May 28, 2020, the claims against Linkup and Biolife Energy were dismissed without prejudice for failure to execute service.  *See Harper v. Biolife Energy Sys., Inc.*, 2020 WL 2771797, at *1 (D. Colo. May 28, 2020).  In the order dismissing the claims against Linkup and Biolife Energy, United States District Judge Daniel D. Domenico noted that United States Magistrate Judge S. Kato Crews had "twice warned Plaintiff that her failure to serve the Defendants could result in the dismissal of her claims against them," and that he "remains unpersuaded that Plaintiff has exercised due diligence in her attempts to serve these Defendants."  *Id.*

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Procedure 12(b)(6), "a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Williams v. Wilkinson*, 645 F. App'x 692, 697 (10th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "The tenet that a court must accept as true all of the allegations contained in a

---

[3] Although Harper alleges the Alaska Action was terminated on September 9, 2018, that is merely the date of the decision of the Supreme Court of Alaska.  *See Harper v. Biolife Energy Sys., Inc.*, 2020 WL 13444243, at *1 (D. Colo. Apr. 29, 2020).  In fact, the Alaska Action terminated on October 26, 2018.  *Id.*

complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Pinon Sun Condo. Ass'n, Inc. v. Atain Specialty Ins. Co.*, 2019 WL 140710, at *3 (D. Colo. Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 4667994 (D. Colo. Sept. 25, 2019) (citing *Iqbal*, 556 U.S. at 678).

Rule 12(b)(6) provides for dismissal of claims that are barred by statutes of limitations. *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 212640, at *4 (D. Colo. Jan. 18, 2013). While statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued on has been extinguished, statute of limitation questions may be appropriately resolved on a motion to dismiss. *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 (10th Cir. 1980). In cases like this one, based on diversity jurisdiction over state law claims, a federal court applies the substantive law of the state in which it sits, including state law limitations periods. *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

### III. ANALYSIS[4]

Defendants move for dismissal based on a lack of personal jurisdiction, improper venue, and that the claims are barred by the applicable statutes of limitations. Solely for the purposes of this Order, the Court assumes that it has personal jurisdiction over both Defendants.

### A.    Statute of Limitations

As an initial matter, neither party explicitly briefs the issue of whether Colorado or Alaska law—or some other state's law—applies to Harper's claims. In her response,

---

[4] Because the Court finds that Harper's claims are barred by the applicable statutes of limitations, it need not address Defendants' arguments concerning improper venue.

5

Harper notes that her unjust enrichment and unfair trade practices claims are "governed by a three-year statute of limitations under both Alaska and Colorado law." (ECF No. 56 at 2.) She does not address what statute of limitations applies to her privacy claim. Therefore, apparently Harper has not determined what state's statutes of limitations apply. In their briefing, Defendants primarily argue that Colorado law applies to Harper's claims and also, seemingly alternatively, include the relevant Alaska statutes of limitations. (ECF Nos. 53, 59.)

Harper alleges this Court has diversity jurisdiction over this case under 28 U.S.C. § 1332. (¶ 1.) "Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Boone v. MVM, Inc.*, 572 F.3d 809, 812 (10th Cir. 2009). "For tort claims, Colorado follows the Restatement (Second) of Conflict of Laws and applies the law of the state with the most significant relationship to the occurrence and parties." *Id.* at 811–12 (citing *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509–10 (Colo. 2007)). Neither party addresses which state has the most significant relationship to this case. Nonetheless, the Court finds that it need not reach that issue; as explained below, the outcome of the case is the same regardless of whether Alaska or Colorado's statutes of limitations for the various claims apply.

The Court finds that Harper's claims are subject to the following limitations periods. First, a three-year statute of limitations period applies to Harper's unjust enrichment claim. Colo. Rev. Stat. § 13-80-101(1)(a); *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011) ("because unjust enrichment is a form of relief in quasi-contract or contract implied in law, . . . the time within which to assert such a claim

6

ordinarily is assessed under the three-year statute of limitations for contract actions").[5] Harper agrees that a three-year statute of limitations period governs her unjust enrichment claim under Alaska and Colorado law.[6]  (ECF No. 56 at 2.)

Next, the Court addresses Harper's right of privacy claim.  In the Motion to Dismiss, Defendants point out that "[r]ight of privacy" is not a common law cause of action expressly recognized in Colorado.  *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1220 (10th Cir. 2004) ("To date, the Colorado Supreme Court does not appear to have expressly recognized [a right to publicity] tort.").  Harper fails to address what statute of limitations period governs her privacy claim, nor does she address Defendants' arguments concerning whether a "right of privacy" claim exists in Colorado, as opposed to an "invasion of privacy claim."  (*See* ECF No. 56.)

Regardless, the Colorado Supreme Court has held that "the tort of *invasion of privacy* by appropriation of another's name or likeness is cognizable under Colorado law.  The elements of this tort are: (1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred."  *Joe Dickerson & Assocs., LLC v.*

---

[5] Although unjust enrichment is usually a contract or quasi-contract claim, in this case, Harper's unjust enrichment claim sounds in tort.  *See infra*, Part III.B.  Given these circumstances, the Court can envision correctly applying the two-year statute of limitations for a tort claim.  However, because Defendants concede that the longer, three-year statute of limitations may apply to the unjust enrichment claim (ECF No. 53 at 7), and Harper states that a three-year statute of limitations period applies to her unjust enrichment claim (ECF No. 56 at 2), the Court will proceed on the basis that the three-year statute of limitations applies.  This conclusion does not affect the Court's analysis of the claims or outcome of this case.

[6] Alaska also has a three-year statute of limitations for contract claims.  *See* Alaska Stat. § 09.10.05 ("Unless the action is commenced within three years, a person may not bring an action upon a contract or liability, express or implied, except as provided in AS 09.10.040, or as otherwise provided by law, or, except if the provisions of this section are waived by contract.")

7

*Dittmar*, 34 P.3d 995, 997 (Colo. 2001) (emphasis added).  The Court applies the Colorado statute of limitations for invasion of privacy, which is two years.[7]  *See* Colo. Rev. Stat. § 13-80-102 (general statute of limitations for tort actions is two years).

Finally, a two-year limitations period applies to her claim for a violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471. *et seq*.  *See* Alaska Stat. § 45.50.531(f) ("A person may not commence an action under this section more than two years after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful by AS 45.50.471."); *Weimer v. Cont'l Car & Truck, LLC*, 237 P.3d 610, 613–15 (Alaska 2010) ("The [two-year UTPA] limitations period begins to run when a plaintiff discovers, or reasonably should have discovered, that the defendant's conduct caused a loss—not when a plaintiff discovers, or reasonably should have discovered, that the defendant's conduct was illegal.").[8]

Defendants correctly point out that an independent claim for punitive damages is

---

[7] Even if the Court applied Alaska's statute of limitations for tort claims, a two-year statute of limitations would apply.  Alaska Stat. § 45.50.531(f).

[8] In her response, Harper states that "Defendants correctly note that two of the primary causes of actions in [her] complaint are unjust enrichment and unfair trade practices, both of which are governed by a three-year statute of limitations under both Alaska and Colorado law." (ECF No. 56 at 2.)  However, as described above, Defendants state that a two-year statute of limitations governs her claim under the Alaska Unfair Trade Practices and Consumer Protection Act.  (ECF No. 53 at 8.)  *See* Alaska Stat. § 45.50.531(f).  Therefore, the Court cannot discern why Harper would make the aforementioned statement that a three-year statute of limitations applies to this Alaska statutory claim unless perhaps it is a typographical error.

Additionally, Defendants point out that Harper "has not alleged why this Alaska statute governs instead of the Colorado Consumer Protection Act (the "CCPA")."  (ECF No. 53 at 8 n.4.)  Nonetheless, Defendants state that "because the CCPA's statute of limitations is three years (C.R.S. § 6-1-115), the outcome here would be no different if Plaintiff had brought a claim under the CCPA."  (*Id.*)  The Court agrees with Defendants' assessment; regardless of whether a two-year or three-year statute of limitations applies to this claim, it is time-barred.

not a viable cause of action in Colorado.  (ECF No. 53 at 11.)  Rather, such a claim is "auxiliary to an underlying claim."  *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 n.11 (10th Cir. 2000) (citing *Pulliam v. Dreiling*, 839 P.2d 521, 524 (Colo. App. 1992)).  Therefore, the Court dismisses Harper's punitive damages claim.

Harper's first three claims are based on Defendants' alleged "unauthorized commercial use of [Plaintiff's] name, story, and likeness" in its 2012–2013 catalogue.  (¶ 14; First Cause of Action ¶ 2; Second Cause of Action ¶ 2; Third Cause of Action ¶ 2, alleging unauthorized "sponsorship" and "approval" by Harper.)

In her Second Amended Complaint, Harper fails to allege on what date or even during what timeframe she obtained knowledge of the catalogue and the presence of her story therein.[9]  (*See generally* ECF No. 36.)  However, Defendants point out that in the Alaska Action, Harper filed an affidavit suggesting she became aware of the catalogue in approximately the last week of June 2012.  (ECF No. 53 at 8); *see* First Colorado Action, ECF Nos. 24-5 and 39; *see also Shifrin v. Colorado*, 2010 WL 2943348, at *5 (D. Colo. July 22, 2010), *opinion after grant of reconsideration sub nom. Shifrin v. State of Colorado*, 2010 WL 3843083 (D. Colo. Aug. 11, 2010), *report and recommendation adopted sub nom. Shifrin v. Colo. Dep't of Real Est.*, 2010 WL 3834397 (D. Colo. Sept. 27, 2010) (finding that previous court filings are subject to judicial notice and that, when documents are subject to judicial notice, the Court can consider them in a Rule 12(b) motion to dismiss without converting the motion into a motion for summary judgment).  Therefore, construing the allegations in her favor, Harper became aware of Defendants' alleged violations and wrongful conduct in 2013

---

[9] Harper *also* failed to allege when she became aware of the catalogue in the First Colorado Action.  *See Harper*, 2020 WL 13444243, at *2.

9

at the latest—approximately seven years before she filed this lawsuit.[10]  Therefore, Harper's claims have been "time-barred since at least 2015 and 2016."  (ECF No. 53 at 8.)

Harper does not dispute as much.  Instead, she relies on Colorado's remedial revival statute, which permits a plaintiff to file claims within 90 days after a timely action—even one commenced in another state—is terminated for lack of jurisdiction.  (ECF No. 56 at 3–6.)  Colorado's remedial revival statute provides:

> (1) If an action is commenced within the period allowed by this article and is terminated because of lack of jurisdiction or improper venue, the plaintiff or, if he dies and the cause of action survives, the personal representative may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later, and the defendant may interpose any defense, counterclaim, or setoff which might have been interposed in the original action.
>
> (2) This section shall be applicable to all actions which are first commenced in a federal court as well as those first commenced in the courts of Colorado or of any other state.

Colo. Rev. Stat. § 13-80-111; *see also West Colo. Motors, LLC v. Gen. Motors, LLC*, 444 P.3d 847, 851 (Colo. App. 2019).  Because Harper filed this action on June 10, 2020, within 90 days of the May 28, 2020 dismissal without prejudice of her claims

---

[10] In the First Colorado Action, Judge Domenico construed the affidavit and Harper's statements to mean that she became aware of Defendants' alleged violations in 2013.  *See Harper*, 2020 WL 13444243, at *2.  Similarly, in the Motion to Dismiss filed in this case, Defendants state that Harper's "claims began accruing in 2013 at the latest . . . ."  (ECF No. 53 at 8.)  The Court will do the same here and proceeds with its analysis as though Harper's claims began accruing in 2013 at the latest.

However, the Court notes that in her response, Harper acknowledges that she became aware of Defendants' alleged misuse of her name and story in 2012.  (ECF No. 56 at 2.)  Regardless of whether the Court considers 2012 or 2013 the year in which Harper became aware of the alleged misuse, the conclusion remains the same: her claims are time-barred.

against Biolife Energy and Linkup in the First Colorado Action, she argues that her claims against Biolife H&W and Linkup are timely here.  (ECF No. 56 at 2–6.)

 For the following reasons, the Court disagrees with Harper.

1. <u>Claims Against Linkup</u>

In Colorado, the "key to applying [the remedial revival statute] is determining whether by invoking judicial aid in the original action, a litigant has given timely notice to his adversary of a present purpose to maintain his rights before the courts."  *W. Colo. Motors,* 444 P.3d at 855 (alterations omitted) (quoting *Gaines v. City of New York*, 109 N.E. 594, 596 (N.Y. 1915)).  "This statement contemplates two conditions: diligence by the plaintiff and notice to the defendant, both of which are critical to ensuring that claims are timely and fairly heard."  *Id.*  "Ensuring that the remedial revival statute is not invoked by a plaintiff who has slept on its rights—or against a defendant who has thus not received timely notice of the nature of the claims against it—will prevent section 13-80-111 from swallowing entirely the ordinary restrictions of a statute of limitation."  *Id.* (alterations, citation, and internal quotation marks omitted).

It is undisputed that Harper named Linkup as a defendant in the Alaska Action and the First Colorado Action.  (ECF No. 53 at 9.)  However, she never effected service on Linkup in the First Colorado Action.  (*Id.*)  In their reply, Defendants explain the circumstances of Harper's failure to serve Linkup in the First Colorado Action.  (ECF No. 59 at 4–5.)  In denying Harper's motion for alternate service in the First Colorado Action, Judge Crews found Harper's efforts to serve the defendants in that case "patently deficient."  (ECF No. 59-1 at 2.)  He explained that her single attempt to obtain service via a process server failed to comply with either Colorado or New York law and did "not constitute due diligence."  (*Id.*)  Ultimately, he concluded that "Plaintiff has not exercised

due diligence such that substitute process is warranted." (*Id.*)

Later in the First Colorado Action, Judge Crews issued an Order and Recommendation in which he denied Harper's Motion for Order Declaring Service of Process Complete and recommended that the case be dismissed for failure to comply with Federal Rule of Civil Procedure 4(m). (ECF No. 59-2.) He observed that Harper's second attempt to serve the defendants via a process server was "merely [to make] a show for the Court as opposed to a true effort to effect service." (*Id.* at 5 n.3.) In fact, he described other means by which Harper might have attempted to effect service, such as serving Annakie at home, or having the process server attempt to serve Annakie in a parking lot or other location. (*Id.* at 5.) However, Judge Crews noted that "Plaintiff settled for ineffectual mailings and a mere two attempts at the same business address. This exhibits a lack of due diligence; the request for substituted service is DENIED." (*Id.*) Notably, Harper did not file objections to the Order and Recommendation. In adopting Judge Crews's recommendation that the First Colorado Action be dismissed for failure to comply with Rule 4(m), Judge Domenico explicitly relied on the fact that Judge Crews "remain[ed] unpersuaded that Plaintiff ha[d] exercised due diligence in her attempts to serve these Defendants." *Harper*, 2020 WL 2771797, at *1.

In her response to the Motion to Dismiss here, Harper argues that Defendants are not correct in arguing that she failed to exercise due diligence in attempting to serve either of the defendants in the First Colorado Action and accuses them of actively and passively avoiding service. (ECF No. 56 at 4–6.) The Court has reviewed Harper's arguments. However, based on Judge Domenico and Judge Crews's conclusions about Harper's lack of due diligence in attempting to effect service on Linkup in the First

12

Colorado Action, the Court cannot find that Harper has satisfied the first requirement of applying the remedial revival statute in this case. *See W. Colo. Motors*, 444 P.3d at 851–52 ("Consistent with the principles of stability and finality underlying Colorado's statutes of limitations, the remedial revival statute cannot be used as a means for excusing a plaintiff's failure to diligently and timely prosecute known claims.")

Additionally, the Court finds that Harper has failed to satisfy the second prerequisite to applying the remedial revival statute: that Defendants had knowledge of the claims. Because Linkup was not served in the First Colorado Action, it did not have knowledge of that action. Defendants provide relevant context, given the fact that this is Harper's third lawsuit. According to Defendants, "Linkup could reasonably have assumed that Plaintiff was no longer pursuing her claims against it after dismissal of the Alaska Action in fall 2018." (ECF No. 59 at 4–5.) They further explain that "[t]hen, Plaintiff did not take any action to provide 'notice' to Linkup of the First Colorado Action, and Linkup did not have notice of this action until it was served with the Second Amended Complaint in July 2021."[11] (*Id.* at 5.)

The Court agrees that this nearly three-year gap between the Alaska Action and service of the Second Amended Complaint here deprived Linkup of reasonable notice of this lawsuit; the Court finds that it would be inconsistent with the purpose of the remedial revival statute to require Linkup to defend itself against these long-dismissed and stale claims now. *See W. Colo. Motors*, 444 P.3d at 852 (quoting 3 Norman Singer & Shambie Singer, Sutherland Statutory Construction § 60:1, Westlaw (7th ed.

---

[11] Harper filed two other complaints in this case (ECF Nos. 2, 19), but only properly served Defendants with the operative Second Amended Complaint (ECF No. 36) in July 2021 (ECF Nos. 43, 44).

13

database updated Nov. 2018) ("Remedial statutes should not be construed so broadly as to create the possibility of results that are unreasonable, illogical or inconsistent with common sense.")). Therefore, the Court finds that the claims against Linkup are time-barred.

### 2. Claims Against Biolife H&W

Defendants argue that the remedial revival statute does not apply to Biolife H&W, which was not a party to the First Colorado Action or the Alaska Action. (ECF No. 53 at 9 (citing *Grenillo v. Hansen*, 467 P.3d 1286, 1287 (Colo. App. 2020) (section 13-80-111 does not apply to revive a claim against a defendant who was not a party to the original action)).) Therefore, Defendants contend that Harper's claims against a new entity in this case—Biolife H&W—are not revived. (*Id.*)

In response, Harper states that Biolife H&W was only formed March 9, 2020 and on information and belief is the same entity with the same CEO, David Annakie, conducting same business but operating under a different name from Biolife Energy. (ECF No. 56 at 3; *see also* ¶ 3).

Defendants reply that despite having similar names, Biolife Energy Systems, Inc.—the entity sued in the Alaska Action and First Colorado Action—is a completely different entity than Biolife H&W. (ECF No. 59 at 2.) They clarify that the entity sued in this action (Biolife H&W) was formed in 2020 by Valerie Simpson (not David Annakie), is owned by Ms. Simpson (not Linkup), and is not the same entity accused of wrongdoing in this lawsuit. (*Id.*) Other than a conclusory allegation that Biolife Energy Systems "has recently begun operating under the name [Biolife H&W]," Defendants underscore that "the Second Amended Complaint provides no support for this incorrect allegation nor does it state a claim for alter ego liability." (*Id.* (citing ¶ 4; *see also*

14

*generally* ECF No. 36).)

The Court agrees with Defendants. As they state, the "Federal Rules [of Civil Procedure] do not permit Plaintiff to simply find the 'nearest apparent match' and attempt to make that entity liable for the alleged wrongdoing of another entity." (ECF No. 59 at 3 (quotation marks altered).) Any argument in support of applying the revival statute because the two Biolife entities have similar names—or allegedly share interests—should be rejected. *See Grenillo*, 467 P.3d at 1289 ("And while we are aware that some other states have made exceptions to the general rule where the change in parties is nominal or where identical interests are represented, the plain language of our statute does not support such an interpretation."). Because Harper's claims have been time-barred since 2016 at the latest, and Biolife H&W was only just made a party to this 2020 lawsuit, the claims against Biolife H&W are barred by applicable statutes of limitations and cannot be saved by the remedial revival statute.

B.  **Request for Attorneys' Fees and Costs**

Defendants argue the Court should award them attorneys' fees and costs pursuant to Colorado Revised Statutes §§ 13-17-201 and 13-16-113, and Alaska Statutes § 45.50.537(b). (ECF No. 53 at 13–14.) In her response, Plaintiff completely fails to address this argument. (*See generally* ECF No. 56.) In their reply, Defendants argue that the Court should deem Harper to have conceded the argument. (ECF No. 59 at 7 (citing *Haynes ex rel. Unger v. Transamerica Corp.*, 2018 U.S. Dist. LEXIS 196321, at *27-28 (D. Colo. Nov. 19, 2018 (citing *Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (holding that employment-retaliation claim waived where the plaintiff failed to address the employer's argument against the claim)); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (holding that the failure of the plaintiffs to

15

file a brief addressing the defendant's argument amounted to a concession that their claim was meritless).)

"Under § 13-17-201, an award of attorney fees is mandatory when an action involving a tort claim is dismissed under Fed. R. Civ. P. 12(b)." *Sebastian v. Greenlink Int'l Inc.*, 2022 WL 2132088, at *1 (D. Colo. June 14, 2022) (citing *Dorsey on behalf of J.D. v. Pueblo Sch. Dist. 60*, 215 F. Supp. 3d 1092, 1093 (D. Colo. 2016)). Defendants who prevail on a motion to dismiss "shall have judgment for [their] reasonable attorney fees in defending the action." Colo. Rev. Stat. § 13-17-201. Section 13-16-113(2) is a "complimentary fee-shifting provision which addresses costs in the same circumstances in which § 13-17-201 applies." *Sebastian*, 2022 WL 2132088, at *1 (citing *Crandall v. City of Denver*, 238 P.3d 659, 662 (Colo. 2010)). The analysis for each provision is the same. *Id.*

First, Harper's construed invasion of privacy claim is a tort claim in Colorado. *See Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371, 377 (Colo. 1997) (recognizing tort claim for invasion of privacy). Similarly, her unjust enrichment claim is predicated on tort. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) ("Because an unjust enrichment claim can be predicated on either tort or contract, we apply the same case-by-case analysis to an unjust enrichment claim as we have done with other claims, assessing the nature of the injury and the relief requested.") Nowhere in the Second Amended Complaint does Harper allege she had a contract with Defendants. (*See* ECF No. 36.) Finally, Harper's claim for violation of the Alaska Unfair Trade Practices and Consumer Protection Act is predicated on the same alleged tortious conduct as her other claims (*see id.* at 5–6), and Alaska law provides for a

mandatory award of attorneys' fees and costs upon dismissal of such a claim, *see* Alaska Stat. § 45.50.537(b) ("[I]n an action brought by a private person under AS 45.50.471—45.50.561, a prevailing defendant shall be awarded attorney fees and costs as provided by court rule.").

As noted above, Harper does not address Defendants' request for attorneys' fees and costs. Regardless, based on the case law and statutory authority described above, the Court determines that Defendants are entitled to their attorneys' fees and costs under the applicable cited authority.

## IV. CONCLUSION

For the reasons explained above, the Court ORDERS that:

1. Defendants' Motion to Dismiss (ECF No. 53) is GRANTED;

2. Harper's Second Amended Complaint (ECF No. 36) is DISMISSED because her claims are time-barred;

3. By **September 23, 2022**, Defendants shall file appropriate documentation detailing their reasonable attorneys' fees and costs;

4. By **October 7, 2022**, Harper shall file a response to Defendants' request for attorneys' fees and costs; no reply from Defendants will be accepted without prior order or leave of Court; and

5. The Clerk is directed to enter judgment and terminate this action.

Dated this 8th day of September, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge